```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

RANDY CRUZ,                           :
                                      :
     Plaintiff,                       :
                                      :
v.                                    :   No. 3:04CV1119(DJS)
                                      :
JULIE L. BEHNKE, and BOSTON           :
MARKET CORP.,                         :
                                      :
     Defendants/ Third-Party          :
     Plaintiffs,                      :
                                      :
v.                                    :
                                      :
CHOICEPOINT, INC. f/k/a Bti,          :
                                      :
     Third-Party Defendant            :
```

## MEMORANDUM OF DECISION

Plaintiff, Randy Cruz, brings this action against Boston Market Corporation ("Boston Market") and its employee Julie Behnke alleging defamation. Defendants have filed a motion for summary judgment (dkt. # 49) pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons set forth herein, defendants' motion is **GRANTED in part** and **DENIED in part**.

### I. FACTS

Cruz applied to work for Boston Market in its Newington, Connecticut restaurant on January 25, 2002. Cruz completed and signed an employment application, which set forth the following question: "Have you ever been convicted of a felony?" Cruz answered: "No." After being hired and working for several months, Cruz applied for the position of Shift Manager. As with

his original application, Cruz authorized Boston Market to perform an investigation into his criminal history, which was conducted by BTi, which is now known as Choicepoint.

On June 10, 2002, Behnke, who was a Regional Manager for Boston Market, terminated Cruz's employment.  Citing a June 5, 2002 report generated by BTi indicating that Cruz had been convicted of two felonies in November of 2000, Behnke told Cruz that he had lied on his job application, that she had proof that Cruz had been convicted of two felonies, and that he was being terminated.  Behnke made these statements to Cruz in the public dining area of the restaurant.  Cruz claims that, after he sat down to speak to Behnke, while Behnke stepped away, a customer in a booth behind Cruz said, "[y]our ass is grass, I know who the lawnmower is."  (Dkt. # 53, Cruz Aff. ¶ 15.)  Gutierrez states that he overheard Behnke and Cruz conversing from where he stood behind the service counter, and that there was at least one customer and one other employee in the same vicinity.

After ending her conversation with Cruz, Behnke told Sergio Gutierrez, Cruz's supervisor, that she terminated Cruz's employment for lying on his job application, and showed Gutierrez the BTi report.  Gutierrez states that he was aware of two other managers discussing Cruz's termination.

## II. DISCUSSION

Cruz asserts the following claims: (1) slander against Julie Behnke (Count One); (2) slander against Boston Market (Count Two); and (3) libel against Boston Market (Count Four). Defendants contend that each of Cruz's claims lacks merit.

### A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

### B. DEFAMATION

Cruz claims that Behnke and Boston Market, through Behnke, defamed him.  First, he alleges that Behnke and Boston Market committed slander when Behnke told him that he had lied on his job application because he had been convicted of two felonies.  Second, Cruz alleges that the criminal history report reflecting two felony convictions, which was generated by BTi and published by Boston Market to Behnke and Gutierrez, was libel.

The Connecticut Supreme Court has defined a defamatory statements as "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217 (2004).  To establish a prima facie case of defamation, the plaintiff must demonstrate the following: (1) the statement at issue was defamatory; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published; and (4) the plaintiff's reputation suffered injury as a result of the statement.  See id.  Furthermore, for a claim of defamation

to be actionable, the statement must be false.  See id. at 228-
29.  The determination of the truthfulness of a statement is a
question of fact for the jury.  Id. at 229.

Cruz has established a prima facie case of defamation with
respect to both of his claims.[1]  Behnke's statements and the
written report indicating that Cruz had been convicted of two
felonies are false.  Unlike the cases to which defendants cite,
the distinction between a felony conviction and a misdemeanor
conviction is critical here;[2] Cruz's response to the inquiry in
the job application was true– he had not been convicted of a
felony– and therefore Cruz did not lie.  Although defendants seek
to minimize the difference between a felony conviction and a
misdemeanor conviction, the difference, which is embraced by
Boston Market's own job application, is substantial.  As such,
defendants have not shown that, as a matter of law, the

---

[1] There is no possible reading of the releases Cruz signed authorizing background checks and absolving defendants of any liability arising therefrom that would allow a finding that Cruz consented to being defamed.  Although Cruz consented to dissemination and discussion of his criminal history within appropriate limits, he did not consent to the dissemination of indisputably inaccurate information to the public.

[2] This distinction was not significant in Gomez v. Larson, No. CV98-0084646, 1999 WL 417819 (Conn. Super. Ct. Jun. 8, 1999), where the plaintiff represented that he had no criminal convictions, felony or misdemeanor.  See id. at *1.  Thus, that plaintiff was untruthful when he responded that he had no convictions, and the defendant's mistaken assertion that he had been convicted of a felony rather than a misdemeanor is immaterial.

statements at issue were substantially true.

Further, because these statements are defamatory per se, injury to Cruz's reputation is presumed. See Battista v. United Illuminating Co., 10 Conn. App. 486, 492 (1987) ("'When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it.'") (quoting Urban v. Hartford Gas Co., 139 Conn. 301, 308 (1952)). "In general, there are two classes of libel that are actionable per se: '(1) libels charging crimes and (2) libels which injure a man in his profession and calling. . . . To fall within the category of libels that are actionable per se because they charge crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached.'" Gambardella v. Apple Health Care, Inc., 86 Conn. App. 842, 850-51 (2005) (quoting Lega Siciliana Social Club, Inc. v. St. Germaine, 77 Conn. App. 846, 853 (2003)). "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." Battista, 10 Conn. App. at 493; see Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 410 (2d Cir. 2000) (applying New york law and holding that "[a] false accusation of serious crime constitutes slander per se."). Stigmatizing a person as a "felon" implies that the person committed a serious crime. The word can also connote that a

person is dangerous or has a flagrant disregard for the law. Therefore, the statements are defamatory per se.

Defendants claim that their allegedly defamatory statements are privileged.  The Connecticut Supreme Court has held that "communications *between managers* regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege. Such communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business." Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 29 (1995) (emphasis added).  Here, however, there is sufficient evidence for the trier of fact to conclude that Behnke's statements to Cruz were published to persons outside the personnel decisionmaking process.  Cruz states that a customer knew about the impending disciplinary action, and Gutierrez states that he overheard Behnke's statements to Cruz, and that others were in the same vicinity.  A trier of fact could therefore reasonably infer that Behnke's statements were published to persons outside Boston Market management.  The publication of the inaccurate criminal history report regarding Cruz, however, is privileged.  Because the report was generated in the context of evaluating and managing personnel and was published to management only, it is privileged.  See id. at 29.

Despite the fact that the report is privileged, defendants'

-7-

motion must be denied if they cannot demonstrate that Cruz is unable to prove that Boston Market abused the privilege.  The Connecticut Supreme Court has stated that

> [t]here are two facets to the defense of privilege. The occasion must be one of privilege, and the privilege must not be abused. Whether the occasion is one of privilege is a question of law. . . . [W]hether the privilege was abused ... depends upon whether there was malice in fact . . . in uttering and broadcasting the alleged defamatory matter.

Torosyan, 234 Conn. at 28 (quoting Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 615 (1955)).  The privilege is abrogated in this context if the defendant made the statement with "actual malice--that is, with knowledge of its falsity or reckless disregard as to its truth."  Id.  Here, Cruz has produced no evidence that Boston Market generated or published the report itself with actual malice.  Because there is absolutely no evidence regarding the process involved in generating the report, there is no basis to conclude that the inaccuracies reflected therein is the product of recklessness or bad faith.  Therefore, judgment must enter in favor of Boston Market on Cruz's libel claim.

### III. CONCLUSION

For the above reasons, defendants' motion for summary judgment (dkt. # 49) is **GRANTED in part** and **DENIED in part.** Judgment shall enter in favor of Boston Market Corp. on Count Four of Cruz's complaint.  Defendants' motion is **DENIED** in all

other respects.

So ordered this 31st day of March, 2006.

/s/DJS
_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**